Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 01 C 5540 | DATE | 3/24/2004 |
| CASE TITLE | HotSamba, Inc. vs. Caterpillar, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  Defendant's motion for summary judgment on Counts II and III of plaintiff's amended complaint [78-1] is denied.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | number of notices |
| | Notices mailed by judge's staff. | MAR 2 5 2004 |
| | Notified counsel by telephone. | date docketed |
| X | Docketing to mail notices. | docketing deputy initials |
| | Mail AO 450 form. | |
| | Copy to judge/magistrate judge. | |
| | courtroom deputy's initials | date mailed notice |
| | Date/time received in central Clerk's Office | mailing deputy initials |

Document Number: 157

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

HOTSAMBA, INC. )
)
      Plaintiff )
)
      vs. ) Case No. 01 C 5540
)
CATERPILLAR INC., ) Judge Joan B. Gottschall
)
      Defendant )
)

DOCKETED
MAR 2 5 2004

## MEMORANDUM OPINION AND ORDER

Plaintiff HotSamba, Inc. ("HotSamba") has filed a three-count lawsuit against Defendant Caterpillar, Inc. ("Caterpillar") arising from Caterpillar's use of HotSamba's alleged proprietary inventory management software. The Complaint alleges that Caterpillar infringed on HotSamba's copyright for the software (Count I), misappropriated HotSamba's trade secrets (Count II), and breached a Licensing Agreement which HotSamba alleges governed Caterpillar's use of the software (Count III). Caterpillar has moved for summary judgment on Counts II and III, arguing that (a) HotSamba's disclosure of the software source code bars its claim for misappropriation of trade secrets,[1] and (b) HotSamba's breach of contract claim is preempted under Federal copyright law. For the reasons stated below, Caterpillar's motion for summary judgment on Counts II and III is denied.

---

[1] HotSamba has filed two amended complaints during the pendency of this motion. At the court's request, the parties have submitted two joint letters to the court informing the court of the impact of those amendments on the motion for summary judgment. The only impact identified by the parties is that Caterpillar has withdrawn its summary judgment argument that any trade secret protection afforded Build 46 was vitiated by HotSamba's alleged publication of that software during the copyright registration process.

-1-



**FACTUAL BACKGROUND**

This case arises from a dispute between HotSamba and Caterpillar over ownership and use of inventory management software developed by HotSamba known as "net-Source" and a customized version of this software called Build 46. The parties have had a business relationship since at least 1995 when they entered into a Consultant Agreement by which HotSamba agreed to provide services to design and develop certain software for Caterpillar. The parties agreed that Caterpillar would own the software developed under the Consultant Agreement.

The primary dispute in this case is over the origin of the net-Source software and the Build 46 customization. HotSamba claims that it independently developed the net-Source software in 1997-98, and that it created a customized version of net-Source called Build 46 that it subsequently delivered to Caterpillar. HotSamba claims that, pursuant to the parties' subsequent Licensing Agreement, Caterpillar agreed to keep the Build 46 software confidential, but that Caterpillar later breached that agreement by selling Build 46 to another software development firm, i2 Technologies, Inc. ("i2"). Caterpillar, on the other hand, contends that HotSamba did not develop net-Source independently, but rather derived it from software that HotSamba developed for Caterpillar under the 1995 Consultant Agreement. Caterpillar argues that, consequently, it owned Build 46 before it ever signed the License Agreement.

On September 8, 1998, HotSamba delivered the source code for Build 46 to Caterpillar. The delivery of source code included the human understandable computer language version of the software, including programmer notes, and other supporting documentation necessary to use and support the software. HotSamba stated that this delivery was tantamount to a written disclosure to Caterpillar, providing comprehensive information regarding the design, architecture, and functionality of net-Source. This transfer occurred eight months before the

parties entered into any license agreement. HotSamba alleges that, during those eight months, Caterpillar examined the code and functionality and could thereby determine the code's origins.

During the period of disclosure before the parties entered into the License Agreement, HotSamba informed Caterpillar that net-Source was HotSamba's proprietary, confidential product. HotSamba made such statements in several pieces of correspondence to Caterpillar detailing the contract negotiations and progress for the net-Source software,[2] and Caterpillar did not express any disagreement with treating the net-Source software as confidential.[3] HotSamba alleges that it made all of its employees that worked on the net-Source software sign confidentiality agreements. Further, at least some of the software delivered to Caterpillar contained a copyright and confidentiality notice.

After the disclosure period, on April 30, 1999, HotSamba and Caterpillar entered into the "Software License Agreement." Under the License Agreement, Caterpillar agreed, among other things, to refrain from unauthorized disclosure of confidential information. Further, the agreement allowed Caterpillar to create derivative works of the software and stated that Caterpillar owned these derivative works provided that Caterpillar did not transfer such works to others.

On or about September 25, 2000, Caterpillar entered into an agreement with i2 called the "Software Purchase and Alliance Agreement." Under this agreement, Caterpillar sold i2 software called "WECAP," which Caterpillar developed from the Build 46 software. HotSamba claims that Caterpillar's transfer of WECAP to i2 infringed on HotSamba's copyright to Build

---

[2] Caterpillar disputes that Caterpillar ever received these pieces of correspondence. HotSamba has provided the affidavit of Mr. Onesto averring that he sent this correspondence. Caterpillar fails to provide any evidence to the contrary.

[3] Caterpillar disputes this but fails to explain how its proffered evidence – a letter attaching Mr. Onesto's agreement edits – shows that Caterpillar expressed disagreement with treating net-Source as confidential.

46, breached the License Agreement and constituted a misappropriation of HotSamba's trade secrets.

Subsequent to Caterpillar's sale of WECAP to i2, HotSamba registered its copyright to Build 46. On February 9, 2001, the U.S. Copyright Office issued a Certificate of Copyright Registration to HotSamba for the net-Source software. However, during the course of this litigation, HotSamba discovered that the code deposited with its registration application did not reflect the code for the Build 46 version of net-Source. HotSamba has twice attempted to remedy the error by submitting a new registration application. On September 15, 2003, HotSamba submitted its third – and most recent – registration application for Build 46. Simultaneously, it requested that the Copyright Office cancel the two prior registrations for Build 46. Because the copyrighted material allegedly contained trade secrets, the deposit only included the first and last ten pages of the Build 46 source code. The Copyright Office issued HotSamba's registration for Build 46 effective September 19, 2003.[4] This registration identified Build 46 as an unpublished work.[5]

## ANALYSIS

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ. P. 56(c). The moving party has the initial burden of proving that no genuine issue of material fact exists. *Matsushita Elec. Indust. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586

---

[4] Caterpillar disputes the validity of the copyright registration, based on the dispute over the software's origin.

[5] Based on the joint letter submitted by the parties to this court on July 15, 2003, in light of the second amended complaint, Caterpillar is no longer pursuing summary judgment based on disclosure of the software through copyright registration. Therefore, the court will assume for the purposes of this motion that the software was not published as part of the copyright registration process.

-4-

(1986). Once the moving party shows that there is no genuine issue of material fact, the burden shifts to the non-moving party to designate specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The court must examine the admissible evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

I.  **Misappropriation of Trade Secrets.**

Caterpillar claims that the court should grant summary judgment on Count II, arguing that HotSamba's disclosure of Build 46 to Caterpillar prior to execution of the License Agreement vitiated any trade secret protection for that software under Illinois law. However, because there are disputed issues of material fact as to whether HotSamba made sufficient efforts to maintain secrecy of its software to retain trade secret protection, summary judgment on Count II is inappropriate.

> Under Illinois law, a trade secret is defined as
>
> information, including but not limited to, technical or non-technical data, a formula, pattern, compilation, program, device, method, technique, drawing, process, financial data, or list of actual or potential customers or suppliers, that:
>
> (1) is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use; and
>
> (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality.

765 I.L.C.S. § 1065/2(d) (2001). Absolute secrecy is not required to maintain a trade secret. Indeed, "[t]he mere fact that [a trade secret owner] disclosed its trade secrets to 'a limited number of outsiders for a particular purpose'—[does] not forfeit trade secret protection." *Rockwell Graphic Sys., Inc. v. DEV Indus., Inc.*, 925 F.2d 174, 177 (7th Cir. 1991) (quoting *A.H. Emery Co. v. Marcan Prods. Corp.*, 389 F.2d 11, 16 (2d Cir. 1968)). In other words, a party seeking trade secret protection need not establish that it took every available precaution to

maintain secrecy as long as it made reasonable efforts to maintain its software as secret. "[O]nly in an extreme case can what is a 'reasonable' precaution be determined on a motion for summary judgment, because the answer depends on a balancing of costs and benefits that will vary from case to case and so require estimation and measurement by persons knowledgeable in the particular field of endeavor involved." *Rockwell*, 925 F.2d at 178-79. Therefore, "[w]hether the measures taken by a trade secret owner are sufficient to satisfy the [Illinois Trade Secrets] Act's reasonableness standard ordinarily is a question of fact for the jury." *Learning Curve Toys, Inc. v. Playwood Toys, Inc.*, 342 F.3d 714, 725 (7th Cir. 2003).

Here, HotSamba has shown that – between the time that it disclosed the software and the time that the parties signed the License Agreement – it sent Caterpillar a number of documents including draft license agreements that stated that net-Source was a confidential and proprietary product. HotSamba's disclosure to a single customer with whom it had an established relationship and to whom HotSamba communicated that the software was confidential is not sufficient to show on summary judgment that HotSamba ceased to enjoy any trade secret protection for its software. *See Warrington Assocs., Inc. v. Real-Time Eng'g Sys.*, 522 F. Supp. 367, 369 (N.D. Ill. 1981) (court refuses to grant summary judgment where claimant disclosed a confidential manual to its customers after receiving assurances of confidentiality).

In support of its motion for summary judgment on Count II, Caterpillar relies heavily on *Nat'l Presto Indus., Inc. v. Hamilton Beach, Inc.*, No. 88-C-10567, 1990 U.S. Dist. LEXIS 16758 (N.D. Ill. Dec. 10, 1990) and *Web Communications Group, Inc. v. Gateway 2000, Inc.*, 889 F. Supp. 316 (N.D. Ill. 1995). These cases are distinguishable from the instant case because claimant in *Presto* disclosed its product to one hundred customers and placed its product on public sale, *Nat'l Presto*, 1990 U.S. Dist. LEXIS 16758, at *2-3, while the claimant in *Web* disclosed its product to competitors without restriction, *Web Communications*, 889 F. Supp. at

320. Here, HotSamba disclosed its software to a single customer, Caterpillar, with whom HotSamba had an established relationship going back at least to 1995. Dealings between parties often require the parties to exchange information, even confidential trade secret information, during the negotiation of final agreements. Such disclosure does not automatically destroy any trade secret protection. Determination of this issue will require a fact intensive inquiry into when information was disclosed and what understandings the parties had about confidentiality. *Learning Curve*, 342 F.3d at 723 ("[T]he question of whether certain information constitutes a trade secret ordinarily is best resolved by a fact finder after full presentation of evidence from each side.") (internal quotations and citation omitted). Since this issue is inappropriate for resolution on summary judgment, the motion for summary judgment on Count II is denied.

## II. Preemption of Breach of Contract Claim (Count III).

Caterpillar argues that HotSamba's breach of contract claim is preempted by its copyright infringement claim under 17 U.S.C. § 301(a). However, because the contract between the parties created rights and obligations beyond those protected under federal copyright law, HotSamba's contract-based claim is not preempted. Summary judgment on Count III is, therefore, denied.

17 U.S.C. § 301(a) creates a two prong test for preemption of a right under state law: (1) the work must be fixed in a tangible medium of expression and be copyrightable subject matter under Section 102 of the Copyright Code; and (2) the right asserted must be equivalent to any of the rights specified in Section 106. *Baltimore Orioles, Inc. v. Major League Baseball Players Assoc.*, 805 F.2d 663, 674 (7th Cir. 1986). Section106, in turn, provides that a copyright owner has the exclusive rights to "(1) to reproduce the copyrighted work in copies or phonorecords; (2) to prepare derivative works based upon the copyrighted work; (3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by

rental, lease, or lending." 17 U.S.C. § 106. Here, the first prong of the Section 301 preemption test is satisfied because Build 46 is fixed in a tangible medium and copyrightable subject-matter. *See ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447, 1453 (7th Cir. 1996). The question, therefore, is whether HotSamba's breach of contract claim involves rights that are not equivalent to the exclusive rights under Section 106.

The Seventh Circuit has taken a narrow view of preemption, concluding that breach of contract claims are almost never preempted by copyright law. *Id.* at 1454 ("[C]ourts usually read preemption clauses to leave private contracts unaffected"). While declining to adopt a rule that any action with the label "breach of contract" is outside the preemption clause, the Seventh Circuit has found that private contracts are generally of a different scope than copyright protection because "[a] copyright is a right against the world. Contracts, by contrast, generally affect only their parties; strangers may do as they please, so contracts do not create 'exclusive rights.'" *Id.* Speaking specifically of software licenses, the *ProCD* court held that "[w]hether a particular license is generous or restrictive, a simple two-party contract is not 'equivalent to any of the exclusive rights within the general scope of copyright' and therefore may be enforced." *Id.* Specifically, the *ProCD* court held that a shrinkwrap license which limited uses of software to non-commercial purposes was not preempted by copyright law. *Id.*

This view of copyright preemption is not unique to the Seventh Circuit, and the majority of courts addressing preemption of breach of contract claims by copyright have found that such claims are not preempted. *See, e.g., Bowers v. Baystate Techs., Inc.*, 320 F.3d 1317, 1325 (Fed. Cir. 2003) (applying *ProCD* and holding that copyright law did not preempt breach of contract claims for violation of a provision that prohibited reverse engineering); *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 456 (6th Cir. 2001) (holding that the extra element of a promise to pay rendered the action for breach of an implied contract qualitatively different than a copyright

infringement claim and this difference includes "the requirement of proof of an enforceable promise and a breach thereof"); *National Car Rental Sys., Inc. v. Computer Assoc. Int'l, Inc.*, 991 F.2d 426, 431-33 (8th Cir. 1993) (holding that the contractual restriction on use of the software made the breach of contract action qualitatively different than an action for copyright); *Taquino v. Teledyne Monarch Rubber*, 893 F.2d 1488, 1501 (5th Cir. 1990) (holding that breach of contract for using drawings in sales materials, as prohibited by the contract, was not preempted by copyright law because it involved the extra element of a promise); *Acorn Structures, Inc. v. Swantz*, 846 F.2d 923, 926 (4th Cir.1988) (holding that breach of contract claim was not preempted because breach of contract was a distinct cause of action).

Applying the *ProCD* holding to the facts of this case, the court finds that Count III for breach of contract is not preempted by federal copyright law. Here, the License Agreement created rights and obligations that were different from those protected under copyright law. Under the License Agreement, Caterpillar agreed to refrain from unauthorized disclosure of HotSamba's confidential information. Further, the agreement allowed Caterpillar to create derivative works of the software, provided that Caterpillar did not transfer such works to others. Those provisions – on which HotSamba bases its breach of contract claim – are not equivalent to the rights specified in Section 106 as they are both more expansive, allowing Caterpillar to perform acts that would otherwise be copyright infringement, and more restrictive, requiring confidentiality of the source code. Therefore, Count III for breach of contract is not preempted under 17 U.S.C. §301(a).

Additionally, for the reasons stated above in its discussion of Count II, the court finds that the issue of whether the software was confidential at the time the parties entered the License Agreement, such that Caterpillar could have breached the confidentiality provision of the contract, is not appropriate for resolution on summary judgment. Because Count III is not

preempted by copyright law and because the confidentiality issue is not appropriate for resolution on summary judgment, the motion for summary judgment on Count III is denied.

## CONCLUSION

Caterpillar's motion for summary judgment on Counts II and III is denied.

ENTER:

JOAN B. GOTTSCHALL
United States District Judge

DATED: March 24, 2004